UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**HENRY L. KLEIN**                                        **CIVIL ACTION**

**VERSUS**                                                **NUMBER: 25-1047**

**JENNIFER M. MEDLEY**                                    **DIVISION "5"**

### ORDER AND REASONS

    This is a suit for damages – compensatory and punitive – against a sitting state-court judge for decisions she made in a still-pending case. It is the latest episode in a years-long crusade undertaken by Plaintiff in multiple state and federal courts seeking relief related to numerous complicated transactions resulting from the failure of First NBC Bank.

    The pleadings and documents filed by Plaintiff in this case are no less byzantine than the underlying transactions giving rise to this (and a lot of related) litigation. Those pleadings and their accompanying exhibits – awash in different fonts, typefaces and sizes (and even different colors) – are often quite hard to follow, as they bounce from one case to another and back again, only occasionally touching upon what appear to be Plaintiff's complaints about what the Defendant-Judge did in <u>this</u> case. And no matter how these documents are styled,[1] they all are painfully repetitive and continuously argue about legal

---

[1] Plaintiff has filed a bizarre collection of heretofore un-heard of (at least to this judge) documents in this record, including a "Request for Guidance" and "Supplemental Request for Guidance" (rec. docs. 3, 4); "Ex Parte Motion to Appoint U.S. Marshall [sic] to Serve Summons and Thereupon to Appoint Magistrate-Judge KWR to Conduct a Chambers v. NASCO Investigation of Fraud Upon the Courts" (rec. doc. 6); "Ex Parte Request for Order to Protect Records and Expedited Production" (rec. doc. 15); "Response to Correction" (rec. doc. 16); "Post-argument Observations" (rec. doc. 28); and a response to a deficiency notice entered by the Clerk's office that runs some <u>480 pages</u> with exhibits. (Rec. doc. 31). This is all too much. And while Plaintiff is proceeding *pro se* in this case, it is notable that he is a currently suspended lawyer with 56 years of experience. He should know, for instance, that it doesn't take 480 pages to correct a deficiency notice.

and factual issues that are not part of <u>this</u> case, but pertain to the various injustices he and his clients allegedly suffered in the underlying case(s).[2]

This case is now before me on consent of the parties pursuant to 28 U.S.C. § 636(c). (Rec. doc. 17-1). Currently pending are two motions filed by Defendant, Judge Jennifer M. Medley ("Judge Medley"). First is the Motion to Dismiss and Motion for Entry of Prefiling Injunction, which seeks (1) dismissal of Plaintiff's Henry L. Klein's ("Klein") claims against her, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and (2) an order that Klein be enjoined from filing pleadings in this Court unless and until he obtains leave of Court from the Chief Judge. (Rec. doc. 13). Second is a Motion to Stay Discovery. (Rec. doc. 18). Klein filed an opposition memorandum to the Motion to Dismiss (rec. doc. 22) but not as to the Motion to Stay.[3] Medley filed a reply to the Motion to Dismiss. (Rec. doc. 25). The Court held oral argument on the motions, and Klein has filed a number of post-hearing documents that will be discussed below.

The Court has thoroughly reviewed the pleadings and substantial exhibits in the record and, based upon that review, the arguments of the parties, and the applicable law, rules as follows.

I. BACKGROUND

On May 27, 2025, Klein filed his Complaint naming Judge Medley of the Civil District Court for the Parish of Orleans ("Civil District Court") as the sole defendant. (Rec. doc. 1).

---

[2] A perfect example – just days ago Plaintiff filed a pleading styled "Motion to Resume Oral Presentation," in which he argues that "[i]n the last few days, the Docket in 2022-03662 has been inundated with pleadings that can't survive *Henson v. Santander* or *The Supremacy Clause of the United States Constitution.* Resuming oral argument will allow each item of evidence (A-W) filed on August 14 to be introduced for Rule 57 purposes." (Rec. doc. 32). This is not case number 2022-03662 and whether that case can survive Plaintiff's arguments is of no moment to this Court.

[3] Klein also filed a Motion to Strike the Motion to Dismiss (rec. doc. 19), which the Court denied. (Rec. doc. 23).

Klein alleges that Judge Medley is part of a long-running conspiracy against him and his clients. He claims that Judge Medley has violated his constitutional rights and the rights of others under 42. U.S.C. § 1983 based on her rulings in the matter entitled *GirodLoanCo, LLC v. Henry L. Klein*, Docket No. 2021-5090, currently pending in the Civil District Court for the Parish of Orleans (the "Underlying Matter"). (Rec. doc. 13). Klein claims that the Underlying Matter arises out of a June 15, 2021 suit by GirodLoanCo against him "as a commercial guarantor on a Levy Gardens promissory note dated September 26, 2008." (Rec. doc. 1).

Chief Judge Vitter previously summarized the factual and procedural background of the Underlying Matter in the Order and Reasons she issued remanding the case to state court in Case No. 25-1127, *Girod LoanCo v. Klein*. Because the details of that case are not of great importance in deciding the jurisdictional issues raised by the pending motion to dismiss, Chief Judge Vitter's summary of those proceedings suffices for present purposes.

It is clear that Klein wants very badly to have his various complaints adjudicated in this Court rather than state court. He twice removed the Underlying Matter to this Court: on October 1, 2024, after which the case was remanded for lack of subject matter jurisdiction, and then again on June 4, 2025, after his Motion to recuse Judge Medley was denied in state court. (No. 24-2366, Rec. doc. 1, 30; No. 25-1127, Rec. doc. 1; *see* Klein's Exhibits H, I, J, K, and L). That case was remanded as well by Chief Judge Vitter. (*Id.*, rec. doc. 51).

Klein claims that Judge Medley violated his rights as secured by the First, Fifth, and Fourteenth Amendments of the United States Constitution by denying him access to courts and "threaten[ing] sanctions for free speech and expression." (Rec. doc. 1). According to Klein, Judge Medley committed these wrongs when she "engaged in a pattern of summary denials of rules to show cause without hearings," denied a motion to enroll, issued a

3

subpoena to Klein's wife as part of post-judgement discovery regarding Klein's assets, and threatened sanctions against him if he violated her orders. (*Id.*).

As his remedy, Klein requests that Judge Medley be found liable and that she be ordered to pay him damages, both compensatory and punitive. (*Id.*).

It is worth noting that Klein's license to practice law in Louisiana was suspended in 2023, largely for his actions in the litigation underlying this case. He has elected to represent himself as a *pro se* litigant in the current matter rather than seek reinstatement of his law license. (*Id.*).

On August 27, 2025, Judge Medley filed a Motion to Dismiss Plaintiff's claims against her under Rules 12(b)(1) and 12(b)(6). (Rec. doc. 13). Judge Medley asserts that this Court lacks subject matter jurisdiction over Kleins' claims based on the following legal defenses: (1) she is entitled to Eleventh Amendment immunity and is not a "person" for purposes of a Section 1983 claim; (2) the *Rooker-Feldman* doctrine applies; (3) the Court may abstain from hearing the claims based on the *Younger* abstention doctrine; and (4) that Judge Medley is entitled to absolute judicial immunity. (*Id.*). These are the jurisdictional arguments currently before the Court.

II.  **LEGAL STANDARDS**

   A.  *Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction. *Price v. Irons*, No. CV 19-11451, 2020 WL 1638376, at *1 (E.D. La. Apr. 2, 2020). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v.*

*Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). Because a 12(b)(1) motion is jurisdictional, a court considers such a motion "before addressing any attack on the merits" in order to "prevent[ ] a court without jurisdiction from prematurely dismissing a case with prejudice." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.* (Miss. Plaintiffs), 668 F.3d 281, 286-87 (5th Cir. 2012) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Nevertheless, a court uses "the same standard" when analyzing a Rule 12(b)(1) motion as it would a Rule 12(b)(6) motion. *See Dooley v. Principi*, 250 F. App'x 114, 115-16 (5th Cir. 2007) (per curiam).

Unlike in a Rule 12(b)(6) motion, though, "[c]ourts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty.,* 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Importantly, the party invoking federal jurisdiction – in this case Klein – has the burden of demonstrating that subject matter jurisdiction exists. *See Celestine v. TransWood*, Inc., 467 F. App'x 317, 318 (5th Cir. 2012) (per curiam) (citing *Ramming*, 281 F.3d at 161).

### B. *Federal Rule of Civil Procedure 12(b)(6)*

To overcome a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must "accept all factual allegations in the complaint as true" and "must also draw all

reasonable inferences in the plaintiff's favor." *Lormand v. US Unwired*, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

A legally sufficient complaint must establish more than a "sheer possibility" that the party's claim is true. *See Iqbal*, 556 U.S. at 678. It need not contain "'detailed factual allegations,'" but it must go beyond "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *See id.* (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand*, 565 F.3d at 257 (citations omitted). The claim must be dismissed if there are insufficient factual allegations "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief. *See Jones v. Bock*, 549 U.S. 199, 215 (2007).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). Otherwise, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

6

### III. DISCUSSION

Plaintiff's complaint does not indicate clearly whether he is suing Judge Medley in her official capacity or individual capacity. Defendant thus moves to dismiss Plaintiff's claims against her on both grounds.

#### A. *Official-Capacity Claims*

In support of her motion, Judge Medley first contends that Klein's claim for damages against her in her official capacity is barred by the Eleventh Amendment. (Rec. doc. 13). In opposition, Klein argues in purely conclusory fashion, that "[n]o aspect of the Eleventh Amendment protects [Judge Medley] from the consequences of her actions in the case at bar" and that "[s]ection 1983 plaintiffs seeking damages for constitutional violations are entitled to compensatory damages and punitive damages, a fact-intensive issue too early to decide." (Rec. doc. 22). Because this question is one of subject matter jurisdiction, the Court considers it under Rule 12(b)(1). *See Jefferson v. La. State Supreme Court*, 2002 WL 1973897, at *1 (5th Cir. 2002) (per curiam) ("[E]leventh amendment immunity deprives the court of subject matter jurisdiction of the action." (alteration in original) (quoting *McDonald v. Bd. of Miss. Levee Comm'rs*, 832 F.2d 901, 906 (5th Cir. 1987))); *Ysleta del Sur Pueblo v. Texas*, 36 F.3d 1325, 1336 (5th Cir. 1994) ("[T]he Eleventh Amendment operates as a jurisdictional bar.").

The Eleventh Amendment of the U.S. Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. This language expressly encompasses not only suits brought against a state by citizens of another state, but suits against a state by citizens of that same state. *See Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *see also*

7

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 (1984*); Edelman v. Jordan*, 415 U.S. 651, 663, 694 (1974). Under the Eleventh Amendment, "an un-consenting State is immune from suits brought in federal courts by her own citizens." *Edelman*, 415 U.S. 651, 663 (1974). Louisiana is such an un-consenting state. *See Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002) ("By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts." (citing La. Rev. Stat. § 13:5106(A))); *see also Holliday v. Bd. of Supervisors of LSU Agr. & Mech. Coll.*, 149 So. 3d 227, 229 (La. 2014) ("While Louisiana may have waived sovereign immunity with respect to some claims, La. Const. art. 1 § 26 makes it clear the State has not waived its sovereignty within the federal system.").

Generally, therefore, Louisiana enjoys immunity against suits brought in federal court. *Price v. Irons*, No. CV 19-11451, 2020 WL 1638376, at *3 (E.D. La. Apr. 2, 2020). This immunity extends to suits brought under state law. *See Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997) (stating that state-law claim is barred where "the plaintiff's claim was against the State of Louisiana and not the named defendant acting in his individual capacity"). Importantly for present purposes, it also applies to suits under Section 1983. *See Cozzo*, 279 F.3d at 281 (stating that "Congress may only abrogate a state's Eleventh Amendment immunity by 'unequivocally' expressing its intent to do so and by acting 'pursuant to a valid exercise of power,'" (quoting *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 634 (1999)), and "that in enacting § 1983, Congress did 'not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States'" (quoting *Quern v. Jordan*, 440 U.S. 332, 345 (1979))).

8

The Eleventh Amendment bar extends to suits against state officials when "the state is a real, substantial party in interest." *Pennhurst*, 465 U.S. at 101–02. Thus, the general rule is that relief sought against an officer is in fact against the sovereign if the decree would operate against the latter. *Hall v. Louisiana*, 974 F. Supp. 2d 964 (M.D. La. 2013). And, as when the state itself is named as the defendant, a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. *Pennhurst*, 465 U.S. at 101–02; *see also Okpalobi v. Foster*, 244 F.3d 405, 412 (5th Cir. 2001) (holding that plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant in lieu of the state itself).

Therefore, this immunity extends not only to suits against Louisiana itself, but also to suits against Louisiana officials acting in their official capacity, including state-court judges. *Price v. Irons*, 2020 WL 1638376, at *3. Indeed, "[s]uits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

Here, Judge Medley, as a Louisiana state district court judge, is a state actor and is being sued as such. Accordingly, the Court considers Plaintiff's claim for damages against Judge Medley as one against her in her official capacity; the Eleventh Amendment therefore bars the claim. *See Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 228 (5th Cir. 2009) ("Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities as state actors."); *Cain v. City of New Orleans*, 281 F. Supp. 3d 624, 646 (E.D. La. 2017); *Cain v. White*, 937 F.3d 446 (5th Cir. 2019) (stating that Eleventh Amendment

9

immunity would apply to a suit for retrospective relief against Orleans Parish Criminal District Court judges); *Summers v. Louisiana*, No. 13-4573, 2013 WL 3818560, at *4 (E.D. La. July 22, 2013) (finding that "an official-capacity claim against [a Louisiana judge] would in reality be a claim against the state itself, and any such claims would be barred by the Eleventh Amendment").

As best as the Court can glean from the pleadings and statements made at oral argument, Klein urges that the Eleventh Amendment does not shield Judge Medley's conduct here because her acts were "administrative," not "adjudicative." The argument is that Judge Medley's "unconventional and unprecedented practice of summary denials of all Klein Motions . . . without a hearing were not 'adjudications' but administrative abberations." (Rec. doc. 22). There is nothing of substance offered in support of this conclusory argument, save for citation to a Louisiana Supreme Court decision that bears no factual resemblance to the underlying facts of this case.

Klein relies heavily on *Palowsky v. Campbell*[4], a Louisiana case involving allegations that the judge's law clerk had a history of intentionally destroying or concealing court documents, that she destroyed multiple court documents related to plaintiff's underlying suits, and that all of the judges of that court conspired with the clerk to cover-up her alleged document destruction. *Id.* The *Palowsky* Court considered these to be "highly unusual and specific allegations" meriting further investigation. *Id.* at 467.

Here, Klein (again in purely conclusory fashion and only in his opposition memorandum) claims that Judge Medley's clerk, non-party Chelsea Hale, committed the

---

[4] *Palowsky v. Campbell*, 22-589 (La. App. 5 Cir. 12/14/23), 378 So.3d 212, 216, *rev'd by Palowsky v. Campbell*, 2024-00093 (La. 6/5/24), 385 So. 3d 1149 (reinstating trial court's judgment denying judges' motion for summary judgment).

10

"exact misconduct" in this case as was alleged in *Palowsky* by making a handwritten caption correction on a document whose importance is never described or alleged by Klein. Even after oral argument, the Court still has no idea what the significance of this alleged caption correction is or was or how Klein was in any way prejudiced by it. The argument is a classic red herring, made solely in an attempt to align this case with *Palowsky*. It does not align at all – even taking Klein's allegations as true.

It is worth noting again here that it is Klein's burden to establish subject matter jurisdiction, meaning it is his burden to establish to the Court's satisfaction that the Eleventh Amendment does not apply here to bar his official-capacity claims. His conclusory and confusing arguments do not satisfy that burden. The Court is convinced that the Eleventh Amendment bars his official-capacity claims against Judge Medley and that dismissal under Rule 12(b)(1) is appropriate. Given that the Court does not have jurisdiction over Plaintiff's claims against Judge Medley in her official capacity, the Court does not proceed to consider the application of the *Rooker-Feldman* doctrine or to consider whether *Younger* abstention would otherwise be appropriate.

### B. Individual-Capacity Claims

Judge Medley also argues that any claims against her in her individual capacity or any claims arising under state law (the existence of which are unclear), also fail because she is entitled to absolute judicial immunity. (Rec. doc. 13). The Court considers this argument under Rule 12(b)(6). *See Ballard v. Wall*, 413 F.3d 510, 514, 520 (5th Cir. 2005) (affirming a district court's Rule 12(b)(6) dismissal on the basis of judicial immunity).

"Judicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial functions." *Boyd v. Biggers*, 31 F.3d 279,

11

284 (5th Cir. 1994) (per curiam). Such absolute immunity means that judges are "immun[e] from suit, not just from ultimate assessment of damages." *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). Indeed, "[j]udicial immunity can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction." *Boyd*, 31 F.3d at 284 (*citing Mireles*, 502 U.S. at 11-12). Actions are "judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'" *Id.* (quoting *Mireles*, 502 U.S. at 12). Accordingly, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Phan v. Hanen*, No. 23-20598, 2024 WL 3593902, at *1 (5th Cir. July 31, 2024) (quoting *Mays v. Sudderth*, 97 F.3d 107, 111 (5th Cir. 1996)). "Judicial immunity is also applicable in cases asserting civil rights violations." *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Pierson v. Ray*, 286 U.S. 547, 554-55 (1967)). Therefore, even alleging that a judge acted with "bad faith or malice" does not preclude immunity. *See Mireles*, 502 U.S. at 11.

In *McAlester v. Brown*, the Fifth Circuit relied upon the following four factors to determine whether a judge was acting within his judicial jurisdiction: (1) whether the precise act complained of, use of the contempt power, is a normal judicial function; (2) whether the events involved occurred in the judge's chambers; (3) whether the controversy centered around a case then pending before the judge; and (4) whether the confrontation arose directly and immediately out of a visit to the judge in his official capacity. 469 F.2d 1280, 1282 (5th Cir.1972). The four *McAlester* factors are to be <u>broadly construed in favor of immunity</u>, and immunity should not be denied where the denial carries the potential of

raising more than a frivolous concern in a judge's mind that to take proper action might expose him to personal liability. *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985) (emphasis added). In some situations, immunity is to be afforded even though one or more of the *McAlester* factors is not met. *Id.*

In this case, Klein essentially argues that the first factor – whether the precise act complained of is a normal judicial function – is not met. The relevant inquiry regarding this is an examination of the "nature and function" of the act, not the act itself. *Mireles*, 502 U.S. at 288. The Court is to look to the particular act's relation to a general function normally performed by a judge. *Id.*

The acts that Klein complains of are clearly judicial in nature. Klein contends that Judge Medley "engaged in a pattern of summary denials of rules to show cause without hearings," denied a motion to enroll, issued a subpoena to Klein's wife as part of post-judgment discovery regarding Kleins assets, and threatened him with sanctions if he violated her orders. (Rec. doc. 1). His claims arise out of judicial acts occurring during, or arising from, state-court matters over which she has presided and is currently presiding. Any ruling that Plaintiff may seek to disturb, revisit, or derive money damages from arose <u>directly</u> out of Judge Medley's official-capacity duties in light of a motion or other proceeding held in her chambers or respective courtroom – all related to the Underlying Matter. The acts complained of here are inescapably judicial.

As he does in addressing the Eleventh Amendment argument, Klein relies on *Palowsky* to argue that Judge Medley was not acting in her adjudicatory role during the "unconventional and unprecedented practice of SUMMARY DENIALS of all [his] motions" in the Underlying matter. (Rec. doc. 22). As noted earlier, he argues that Judge Medley's "serial

13

denials without a hearing were not '. . . adjudications . . . ' but administrative aberrations," not entitled to immunity. (*Id.*). However, *Palowsky v. Campbell* is not applicable here. The Court in that case found that judicial immunity did not extend to a judge's supervision and investigation of a law clerk's activities, considering these acts to be administrative functions. *Id.* at 467. Here, the thrust of Klein's claims arises from issuance of orders and the management and control of Judge Medley's docket—actions that are core aspects of judicial administration. *Price*, 2020 WL 1638376, at *4. Subpoenas and summary denials without hearings pertain to judicial acts inherent in case management and procedural oversight, duties that lie within the authority of judges to control the orderly progression of litigation. And Ms. Hale's name isn't even mentioned in the Complaint, so tethering his case against Judge Medley to a non-articulated claim for failing to supervise her law clerk is unavailing. Furthermore, Klein doesn't bother to explain the nature of any the various summary denials – what relief did the motions or rules seek and under what circumstances were they denied?

And finally, even if Plaintiff's allegations could be read as suggesting that Judge Medley acted with malice, it nonetheless involves Judge Medley acting in her judicial capacity of presiding over Plaintiff's proceedings. Based on the substance of Plaintiff's claims, the judge enjoys absolute immunity. Thus, dismissal under Rule 12(b)(6) is appropriate.

### C. *Request for Pre-filing Injunction*

In her Motion to Dismiss, Judge Medley also seeks an order of this Court directing that Klein be enjoined from filing any additional pleadings or complaints in this Court, unless and until he has obtained leave of Court from the Chief Judge. As I noted at the hearing on the motion, while such relief is available under certain circumstances, I do not believe it appropriate for a Magistrate Judge in a consent case to issue such an order that impacts a

litigant's rights cross the entire Court for the foreseeable future. That portion of the motion will be denied without prejudice to Defendant to refile before a District Judge.

### D. Dismissal With or Without Prejudice

Ordinarily, "a court should grant a pro se party every reasonable opportunity to amend," *Hale v. King*, 642 F.3d 492, 503 n.36 (5th Cir. 2011) (quoting *Peña v. United States*, 157 F.3d 984, 987 n.3 (5th Cir. 1998)), "unless it is obvious from the record that the plaintiff has pled his best case." *Id.* at 503; *see also Price*, 2020 WL 1638376, at *5. Klein filed with his Complaint twelve (12) exhibits that total 121 pages. (Rec. doc. 1). He then filed ten (10) exhibits that total 82 pages in his *Opposition to Motion to Dismiss*. (Rec. doc. 22). He has had the benefit of oral argument and thereafter filed two more pleadings totaling some 480 pages. (Rec. doc. 28, 31). Despite these prolix filings, the precise bases for his claim for damages against Judge Medley remain in turns vague, conclusory, and rambling. Moreover, Klein spends most of his Complaint and other filings complaining about the actions of GirodLoanCo and its counsel, as well as his representation of non-parties in other related litigation, Regina Heisler and the Pittmans, neither of whom are parties even to the Underlying Matter. Even after the presentation of oral argument and the filing of *Post-Argument Observations*, Klein does not suggest how he could ever amend the substance of his allegations to cure the jurisdictional defects discussed above. These are not curable defects in the Court's view.

### E. Motion to Stay Discovery

Because the Court finds that it lacks jurisdiction to hear Plaintiff's claims and is dismissing this matter, the Motion to Stay Discovery will be denied as moot.

## IV.     CONCLUSION

For reasons known only to him, Mr. Klein has decided to forego the appellate processes in state court and resort to this Court to redress his grievances against a state-court judge who did no more than rule against him in her court. Following oral argument, it is clear he seeks to substitute this Court's jurisdiction for a state-court appeal of the rulings he objects to. These statements are telling:

> THE COURT: I'm going to ask you a question again: Why didn't you appeal any of these orders?
>
> MR. KLEIN: I have seen -- I've been before 50 state judges who have not -- who have not enforced *Henson v. Santander*. I've been before 50 state court judges.
>
> THE COURT: You're going to tell me that you think it was a waste of time.
>
> MR. KLEIN: Yes. Yes. Yes. Yes, I am. I have told you.
>
> . . . .
>
> MR. KLEIN: I am seeking what the United States Supreme Court called prompt succor in a court that is capable of giving me prompt succor. <u>I have said often -- and I have said to you, Your Honor -- filing matters in the Fourth Circuit – state court of appeals is a vain and useless thing.</u>
>
> . . . .
>
> MR. KLEIN: <u>I do not have to tilt at windmills</u>, Your Honor. I don't.

(Rec. doc. 35 (Transcript) at 13, 19-20)(emphasis added).

Klein's belief – no matter how sincerely held – that his appellate efforts would be unsuccessful is not an excuse to run to federal court with a lawsuit against the state district

judge who ruled against him.[5]  This is an inappropriate and unavailing gambit, which should come as no surprise to any lawyer with even a basic understanding of the concepts of federalism and comity.  His words reveal that Klein is apparently not one of those lawyers:

> Comity and federalism are, of course, very important.  But NOT when the state court proceedings are NOT " . . . judicial . . ." and a multibillion dollar fleecing of Louisiana citizenry is taking place unchecked.  This Court of law and order has a *parens patriae* responsibility to take command and protect the vulnerable.

(Rec. doc. 22 at 8).  The Court begs to differ.  Comity and federalism are bedrock principles and are <u>always</u> important – and they do not allow or require this Court to "take command" of an ongoing state-court proceeding to protect a litigant who won't even avail himself of available state appellate processes.  What they require is dismissal of this case.

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Dismiss on Behalf of Judge Jennifer Medley (rec. doc. 13) is **GRANTED** IN PART. The Court **DISMISSES WITHOUT PREJUDICE**[6] plaintiff's claims against Judge Medley in her official capacity and **DISMISSES WITH PREJUDICE** Plaintiff's claims against Judge Medley in her individual capacity.  The Court **DENIES** the request for pre-filing injunction (rec. doc. 13) and **DENIES AS MOOT** the Motion to Stay Discovery.  (Rec. doc. 18).

---

[5]  The Court does not doubt that Klein sincerely believes that he and his clients have been wronged by the various parties in the related cases and it's clear that his lack of success in state court has both frustrated him and fueled his increasingly overzealous efforts to seek redress for those alleged wrongs.  But too much is too much and suing a presiding state-court judge in federal court rather than using the state appellate process is simply beyond the pale.

[6]  The Fifth Circuit has made clear that a dismissal for lack of subject matter jurisdiction must be made without prejudice.  *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020); *see also Taylor v. Owens*, 990 F.3d 493, 496 (6th Cir. 2021) (explaining dismissal for lack of subject matter jurisdiction is without prejudice); *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case.").

New Orleans, Louisiana, this __23rd__ day of _____October_____, 2025.

                                                **MICHAEL B. NORTH**
                                         **UNITED STATES MAGISTRATE JUDGE**